## Commonwealth, By et al. v. Leslie County.

(Decided February 13, 1917.)

### Appeal from Leslie Circuit Court.

1. Taxation—Omitted Property—Assessment.—The proceeding for the assessment of omitted property by the revenue agent provided by section 4260 of the Kentucky statutes is a special means provided for the assessment of omitted property, and the statute must be strictly followed. In such proceeding neither the county nor any citizen has a right to interfere by intervening pleading to prevent the assessment of the property because not owned by the defendant, or, if owned, that it is not located within the county, as this is no place to try title to land.

2. Taxation—Omitted Property—Assessment.—Even if such questions could be raised by an adverse claimant to the land, it would still be incompetent for the county as such to do so.

3. Taxation—Omitted Property—Assessment.—In such proceeding the court is the sole trier of all questions of fact and law, and it is incompetent to submit the questions of fact to a jury.

LEWIS & LEWIS and HELM BRUCE, BRUCE & BULLITT for appellant.

A. H. PATTON and C. H. MORRIS, Assistant Attorney General, for appellant, Commonwealth.

CLEON K. CALVERT and JOHN B. MINIARD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is a proceeding by Walton Byars, a revenue agent, begun in the county court of Leslie county under the provisions of section 4260 of the Kentucky Statutes, seeking to have listed for taxation for the years 1911-1915 inclusive, a large body of land which is alleged to be owned by W. L. Bramblet, individually, and as administrator of the estate of George W. Bramblet, deceased, who in each of such capacities was made a defendant to the proceeding. The land is described in accordance with the title papers of the defendant and the assessment value is also stated. This proceeding has the sanction of the supervisor of revenue agents in accordance with the requirement of the statute, and there is no question of the regularity of the proceeding.

In due time the defendant appeared and filed answer, admitting all of the allegations of the statement, and conceding the right of the Commonwealth to the relief

asked, and agreed that a judgment as prayed for might be entered. Before this was done, however, the county attorney for that county, together with a specially employed counsel, appeared in the county court and offered to file what is styled the "intervening petition" of Leslie county, which it asked to be made a counterclaim against the plaintiff (Commonwealth), and a cross-petition against the defendant, but it sought no affirmative relief against either of the parties to the proceeding except that it have judgment for its costs if the proceeding should be dismissed in accordance with its prayer. Both plaintiff and defendant objected to the filing of this document, but their objections were overruled and it was filed, followed by a motion made by both plaintiff and defendant that it be stricken from the record, which motion received a similar fate. A demurrer was then filed to it by both parties, which proved ineffectual, as it was promptly overruled. Both parties then declined to introduce evidence and the court rendered a judgment dismissing the proceeding, from which an appeal was prosecuted by both parties to the circuit court. The practice in that court was identical with that adopted in the county court, followed by the same results, except that the circuit court empaneled a jury to try the issues of fact sought to be raised by Leslie county, which jury, under instructions of the court, returned a verdict finding that the land sought to be assessed was not located within the county, and upon this verdict it was adjudged that the proceeding be dismissed, and that Leslie county recover its costs against the parties to the proceeding, and to reverse that judgment this appeal is prosecuted.

It is doubtful if there can be found anywhere within the annals of the law a proceeding that will compare in uniqueness with this one. The right to intervene in this proceeding, as claimed by Leslie county, is best shown by its pleading, from which we quote:

"The petitioner says that within its boundaries a large number of citizens of it live, owning and claiming the land within its boundaries wherein they live, and that a large number of citizens of other states own and claim land in said county as well as citizens of other counties of this Commonwealth, and it says that every foot of the land within its boundaries is owned and claimed by citizens of this and other states by good title,

and has been listed for taxation each year for the past ten years or more; and that such taxes as have been assessed have been paid; and it says that this is true as to the land described in the petition herein; that the same is owned and claimed by citizens of said county, state and other states, who are listing the same for taxation in Leslie county, and paying the taxes thereon for a great number of years; and that the land so owned, assessed and taxed in it, is in that territory, the same land that the plaintiff now seeks for the first time for more than ten years and more than fifteen years to list for taxation in said county; and that said land never was listed for taxation in said Leslie county."

Further along in the ten typewritten pages of the pleading it is denied that the defendant, Bramblet, either individually or in his representative capacity, is the owner of any of the land described, or that any of it is within the boundaries of Leslie county. The pleading then becomes suspicious and questions the good faith of the parties to the proceeding and says in substance that it was begun as the result of a conspiracy between Bramblet and others mentioned against "the bona fide citizens and taxpayers of Leslie county" to list for taxation the lands designated by the pleader as "Wild Cat Lands," and that this will cast a cloud upon the land titles of the county, and the subsequent sale of the lands by the conspirators, sought to be assessed, "would be champertous and void *in toto,* for that the lands described in the petition have been in the actual adverse possession of many of the citizens of said county, and those claiming under them, for more than 20 years, and are at this time in such actual adverse possession."

Not content with exposing such diabolical purposes on the part of the defendants, the pleader further enlightens the court by saying that "this whole action was hatched, trapped up, concocted by and conceived in the plan of the defendant and his aids, the said Sears and the said Courtney, for the purpose of locating in Leslie county lands that were never therein." It is here shown that the county is already filled with land, and that there is no room for any more. This is sufficient to guarantee the county and its citizens against harm, for if defendant should succeed in bringing his land into the county he could find no place to put it and would be forced to take it away.

It is to prevent such acts as the ones stated that the county claims the right to become a party to the proceeding. It will be observed that there are two grounds for this claim; first, that the land is not located within the boundaries of the county, and that the defendants should not be permitted to bring it there and locate it within such boundaries; and second, that if it is there it is owned by residents of the county or citizens of other states, or other counties in this state who claim it adversely, and who have paid the taxes on it, and it is the duty of the county to see that no one else lays claim to it or pays any more taxes on it.

It must be conceded that the lofty purposes of the county as manifested by its pleading should be highly commended. Not only is it made to appear that it assumes therein to exercise the duties of guardian to its citizens, but it is also shown to be justly jealous that the waters of its Greasy creek and Bear creek shall not be polluted or contaminated by mingling with those of a Kingdom Come, a Red Bird, a Troublesome, or an Elkhorn.

Cruel though it may seem, we are unable to find anywhere any authority justifying us in permitting the county in a proceeding like this to be heard upon the questions which it raises by its pleading. The proceeding provided by section 4260 is only a supplemental means provided by the legislature for assessing omitted property and in which no one is interested except the Commonwealth and the party proceeded against. Commonwealth v. Ryan's Exrs., 31 Ky. Law Rep. 1070; Commonwealth v. Adams Ex. Co., 124 Ky. 85. No one can institute the proceeding except a duly qualified revenue agent, and he must proceed strictly in accordance with the statute furnishing the remedy. Commonwealth v. Adams Express Co., *supra;* Commonwealth v. Helm, 163 Ky. 69. All questions of fact as well as of law are to be tried by the court without the intervention of a jury. Stearns Coal & Lumber Co. v. Commonwealth, 167 Ky. 51. If the property set forth in the statement of the revenue agent is not sufficiently described under the requirements of the statute, no one can question it except the alleged owner who is made a defendant. The proceeding being only a means for the assessment of omitted property, and being exclusively provided by statute, must be strictly followed, and no one has a right

to a voice in it except as provided by the statute.  But if the county had a right to intervene, it has manifested no legal objection to the assessment of the property. If the land is not located within the boundaries of Leslie county, neither it nor its citizens will be hurt.  On the contrary, in that event they will be benefited to the extent of the taxes collected.  If it is located within such boundaries, and has not been assessed, it is eminently proper that it should be assessed, whether owned by the defendant in this proceeding, or by others.  If owned by others who have assessed and paid taxes on it, neither the county in its corporate capacity nor as guardian for its citizens may object to another paying taxes on it, also.  The fact that there may be conflicting claims to the land clearly presents no reason for the interference of the county as an objector to this proceeding.  It is no part of its function to anticipate litigation against its citizens and to engage in an effort to ward it off.  Its duties as a political unit are fulfilled by guarding and looking after the interests of its citizenry of a public nature.  To hold otherwise so as to justify its effort in this case would be clothing it with such paternal authority as to be wholly obnoxious to our form of government, and which has never been tolerated or upheld in this country.

We have no hesitancy in concluding that the pleading of the county has no place in this record, and that the court should have sustained the objection to its being filed, but having refused this, the motion to strike should have prevailed.  This having been overruled, the demurrer to it should have been sustained.  It is equally manifest, even if the issues raised by that pleading were legitimate and proper that they should not have been submitted to a jury for determination.  When the answer of defendant was filed agreeing to the statements made by the Commonwealth, it was the duty of the court, after receiving the consent of the supervisor of revenue agents, as it did in this case, to enter a judgment assessing the property for taxation at the value fixed and agreed upon.

Of course this opinion can have no effect whatever upon any question of title that may arise between defendant, Bramblet, either individually or as personal representative, and others claiming an interest in any of the land antagonistic to him.  Such questions, if they

should arise, will not, for manifest reasons, be affected by this opinion, but will be determined upon the facts as then presented. What we have said applies only to the proceeding instituted for the purpose of collecting taxes from the defendant, and in which only he and the Commonwealth are necessary parties and who only are affected by the judgment; and then only to the extent of the purpose of the proceeding.

Wherefore, the judgment is reversed, with directions to the circuit court to enter an order directing the county court to dismiss or strike from the files the pleading of Leslie county and to enter a judgment assessing the property against the defendant, as prayed for in the statement filed by the revenue agent, and for proceedings consistent with this opinion.