CASE 16—CONTESTED WILL—JUNE 14.

## Ellis, Etc. v. Ellis, Etc.

APPEAL FROM MASON CIRCUIT COURT.

1. NEW TRIALS IN WILL CASE.—The Circuit Court has the same right to grant a new trial in a proceeding to probate a will as it has in other civil cases.

2. GRANTING NEW TRIAL—REVERSAL.—The Court of Appeals will not reverse on account of the action of a trial court in granting

a new trial, unless there has been a flagrant abuse of discretion by the court in doing so.

3. INSTRUCTION—No EVIDENCE.—The . Circuit Court did not err in refusing to instruct on undue influence when there was no evidence on the subject.

4. ERROR—NO OBJECTION TO RULING.—There can be no reversal for incompetent evidence when no objection was made to its admission.

WINFIELD BUCKLER FOR APPELLANTS.

1. The Circuit Court has no power to set aside a verdict and grant a new trial in a will case. Acts 1797; Ky. Stats., sec. 4859; Wills v. Lochnane and Wife, 9 Bush, 547; Pryor v. Miñor, 2 Ky. Law Rep., 255; Maxwell v. Maxwell, 3 Met., 101; Singleton v. Singleton, 8 B. M., 350.

2. Where a verdict is improperly set aside and a new trial granted, the judgment upon the second verdict should be reversed and the trial court directed to enter judgment upon the verdict improperly set aside. Holmes v. McKinney, 4 Mon., 7; Harrel v. Harrel, 1 Duv., 203; Carlin v. Baird, 11 Ky. Law Rep., 932; Salmons v. Webb, 12 B. M., 365.

GARRETT S. WALL ON SAME SIDE.
    (No brief in record.)

E. L. WORTHINGTON AND HANSON KENNEDY FOR APPELLEES.

1. The verdict of a jury in a will contest stands upon the same footing as that in other civil cases. Civil Code, secs. 340, 838; Broaddus v. Broaddus, 10 Bush, 299; McCarty v. McCarty, 8 Bush, 504.

2. The Court of Appeals will not reverse on account of the action of the lower court in granting a new trial, unless there was "a flagrant abuse of discretion in so doing." L. & N. R. R. Co. v. Coniff's Admr., 16 Ky. Law Rep., 296; Ewing v. Price, 3 J. J. M., 520; Miller v. Ashcraft, 17 Ky. Law Rep., 894; s. c. 98 Ky., 314; Zimlich v. Zimlich, 90 Ky., 657; Hoerth v. Zable, 92 Ky., 202; Bush v. Lisle, 89 Ky., 393.

3. The bill of exceptions setting out the evidence heard on the first trial is not properly a part of the record. Miller v. Ashcraft, supra; Civil Code, sec. 337, subsec. 2; Kemper v. Abbott, 6 Ky. Law Rep., 215; McFarland v. Barton, 89 Ky., 294.

4. There was no evidence on which to predicate an instruction on undue influence and such instruction was properly refused. Zimlich v. Zimlich, *supra;* Burney v. Burney, 46 Am. St. Rep., 33; Henry v. Hall, 54 Am. St. Rep., 22; Cudney v. Cudney, 68 N. Y., 152; Note to Richmond's App., 21 Am. St. Rep., 98; Sechrest v. Edwards, 4 Met., 163.

5. Error can not be predicated of the testimony of testator's widow, because no objection was made to her testimony.

6. Appellant can not complain of error in giving or refusing instructions, because some of the requested instructions are not in the record. Civil Code, sec. 337-2; C., N. O. & T. P. R. R. Co. v. Barr, 6 Ky. Law Rep., 450.

7. None of the instructions given or refused is properly part of the record, because not included in the bill of exceptions, or identified by an order of court. Forest v. Crenshaw, 81 Ky., 51.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

This is a contest over a paper purporting to be the will of Richard Ellis, which was executed on May 5, 1885. It was probated in the county court. On the first trial in the circuit court, the jury found that the paper was not his will. The court granted a new trial, and set aside the verdict. It is insisted that it had no power, under the law, to grant a new trial. Section 4859, Ky Stat., requires all necessary parties to be brought before the court, and it is to try the question unless a jury is demanded, "and the final decision given shall be a bar to any other proceeding to call the probate or rejection of the will in question,—subject to the right of appeal to the court of appeals as hereinbefore named." Section 4850, Id., is the section to which the foregoing section refers, part of which reads as follows: "The circuit court shall try both law and fact unless a jury be required. The court of appeals shall not hear any matter of fact pertaining thereto, other than such as may be certified from the circuit court; and the same effect shall be given to the verdict of a jury in a will case as is given to

the verdict of a jury in other civil cases." It is argued by counsel for appellants that as the act of 1797, which was in force until 1852, provided that the verdict of a jury in will case should be final between the parties, "saving to the court a power of granting a new trial for good cause, as in other trials," and as the present statute does not in terms authorize a court to grant a new trial, therefore the legislature manifested the purpose to take from the court the right to grant a new trial. We can not agree with him that the legislature had any such purpose in view. He seems to misapprehend the meaning of section 11 of the act of 1797, which reads as follows: "When any will shall be exhibited to be proved, the court having jurisdiction as aforesaid, may proceed immediately to receive the proof thereof, and grant a certificate of such probate: if, however, any person interested, shall within seven years afterwards appear, and by his bill in chancery contest the validity of the will, an issue shall be made up whether the writing produced be the will of the testator or not, which shall be tried by a jury, whose verdict shall be final between the parties, saving to the court a power of granting a new trial for good cause, as in other trials." Under the act of 1797, the county court had jurisdiction to probate wills; but the foregoing section was passed providing how any person, after the will had been probated, might contest in chancery the validity of a will which had been probated. In such a proceeding in chancery it was the duty of the chancellor to have the question as to whether the writing produced be the will of the testator or not tried by a jury, and the verdict of the jury was final unless the court granted a new trial for good cause. The reason why the statute provided that the verdict should be final was because a jury was impaneled

to determine an issue, the only one involved in the case, and because, in other chancery cases where an issue was ordered out of chancery, the verdict of the jury was binding on the chancellor unless set aside. The purpose of the legislature was to give the same effect to the verdict of a jury in a chancery case, involving the contest over a will, as would be given it on an issue out of chancery. Section 4861, Ky. Stat., provides that where non-residents, at the time of the final decision in the circuit court, resided out of the State, and were before the court only by constructive service, any other interested person, who was not a party to the proceeding by actual appearance, may impeach the decision, and have a retrial of the question of probate, and either party shall be entitled to a jury for trial thereof. This section provides for an *equity* proceeding after the will has been probated, as did section 11 of the act of 1797 a chancery proceeding after the will had been probated. If it had been said in section 4861 that the verdict of a jury should be *final* in a proceeding provided for, and omitted to provide that the court could grant a new trial, it would seem that a new trial could not be granted in an *equity* case to which the section refers. It omitted any reference as to the effect of the verdict of a jury, or as to the power of a court to grant a new trial, and the reason is obvious. The evident purpose was that, when a jury was demanded, the trial should proceed, and a new trial might be granted as in other cases triable by jury. Section 4859 of the present statute says nothing about the verdict being final. It does not relate to the question as to the effect of the verdict of a jury. It declares what the effect of a final decision is. The final decision referred to there is not the verdict of a jury, but the judgment of a court. When the legislature used

the words "final decision," it meant the final judgment in the proceeding after the parties had been heard as provided by law. It certainly could not have been intended by the Legislature, in the enactment of the present statute, to prevent the Circuit Court from granting a new trial. This court has frequently ordered new trials to be granted in will cases. In fact, it has directed the Circuit Court to enter judgments declaring the paper in contest to be a will.

It is hard to conceive that, although the Circuit Court may have committed such an error during the trial of a will case as would authorize this court to reverse, yet the Circuit Court would be powerless to correct that error. If this were true, much delay would result to the parties interested, and great expense might follow. Section 340, Civil Code, authorizes new trials to be granted in an action or proceeding. Section 838, Id., provides that it shall regulate the pleadings and practice in civil cases. We are of the opinion that the Circuit Court has the same right to grant a new trial in a proceeding to probate a will as it has in other civil cases. The grounds filed with the motion for a new trial were numerous, but it does not appear what the court's reasons were for granting it. Twenty-odd intelligent men, who had known the testator for years, testified as to his capacity to make a will. They were merchants, farmers, doctors, etc. While the contestants offered the testimony of many witnesses, many of whom knew the testator as well as did the witnesses introduced by the propounders, yet only four or five expressed an opinion as to want of capacity in the testator to make a will, and some of the reasons which they gave were not very convincing that their opinions were of much value. The testator had been a shoemaker, a farmer, and a successful merchant,

who had accumulated several thousand dollars; and, at the time he made his will, his capacity to make it was as good as it had been at any time during his life.   He was a close, saving, thrifty man. .At the time he made his will, he was engaged in merchandising, and was giving the business his accumulated several thousand dollars; and, at the time he made his will, his capacity to make it was as good as it had been at any time during his life.   He was a close, saving, thrifty man.   At the time he made his will, he was engaged in merchandising, and was giving the business his personal attention.   He went to his lawyer, and expressed his desire to make his will, and directed him how to prepare it.   This court has repeatedly held that it will not reverse on account of the action of a court in granting a new trial, unless there has been a flagrant abuse of discretion by the court in doing so.   L. & N. R. R. Co. v. Coniff's Adm'r, 16 Ky. Law Rep., 296 [14 S. W. 543]; Ewing v. Price, 3 J. J. Marsh. 520; Miller v. Ashcraft, 98 Ky., 314 [32 S. W. 1085]; 17 Ky. Law Rep., 894.

On the second trial the same testimony was heard as on the former one, with some additional testimony; but it was not calculated to change the opinion of the court as to the capacity of the testator to make a will.   The court did not give an instruction upon the question of undue influence for the reason that there was no testimony upon which to base it.   There was not the slightest evidence that anybody had ever endeavored to influence the testator to make a will, nor as to how it should be made.   Neither was there any testimony tending to show that he was dominated by the beneficiary of the will.   Under such circumstances, the court did not err in failing to give an instruction upon that question.   If a person has testamentary capacity, he can

dispose of his estate in any way he sees proper. The dis-
position of his estate may not meet with the approval of
his neighbors or his disappointed kindred; a court and a
jury may feel that he has disposed of it in the manner in
which they would not have done under similar circum-
stances; yet that is no reason why it should be adjudged
that the paper which he leaves as his last will is invalid.
The testator left two children, who were from 50 to 60
years of age at the time of his death. They seem to have
been poor, and without much capacity to take care of them-
selves. There was proof that he had said the reason why
he did not bequeath them more than $5 each was because he
had given them their shares of his estate. This he so
stated in his will. He gave other reasons in regard to his
children and to their children why he did not give his own
children more of his estate. It is unnecessary to incumber
this opinion with these reasons, as it would unnecessarily
incumber it with statements which would reflect upon the
character of some of his unfortunate grandchildren. The
testator gave his estate to his wife, but there is no escape
from the conclusion that he had such mental capacity as
the law recognizes as sufficient to enable persons to dispose
of their estate by will.

Counsel complains that the court erred in allowing the
vendee, Nancy Ellis, to testify that she did not know that
her husband had made a will until after his death, and that
she had never heard that two deeds had been made by
Wiggins. It is unnecessary to say whether or not the
court erred in thus allowing the widow to testify, because
there was no objection to that part of her testimony. The
judgment is affirmed.